# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3034 | DATE | 2/21/2001 |
| CASE TITLE | NABIL E. SOLIMAN vs. NORTHROP GRUMMAN CORPORATION | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion for summary judgment [8-1] is granted. Judgment is entered for defendant Northrop Grumman Corporation and against plaintiff Nabil E. Soliman. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 27 2001 | 18 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/21/2001 date mailed notice | |
| SB courtroom deputy's initials | | Date/time received in central Clerk's Office | jad mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NABIL E. SOLIMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 3034 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| NORTHRUP GRUMMAN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
FEB 27 2001

## MEMORANDUM OPINION AND ORDER

Nabil E. Soliman ("Soliman") sues Northrop Grumman Corporation ("Northrop") for age and disability discrimination in violation of the Age Discrimination in Employment Act, 26 U.S.C. § 12101 ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Soliman contends Northrop terminated his employment because of his age and disability. Northrop moves for summary judgment, pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1.

## BACKGROUND

**I.    The parties**

All facts are undisputed unless otherwise noted. Northrop is a major United States defense contractor. The company's defensive systems division has a facility in Rolling Meadows, Illinois, which employs over 1,700 individuals. The company is involved in research, development, and manufacture of electronic countermeasure systems and components. Gordon Stewart ("Stewart") is the director of software engineering at the Rolling Meadows facility.

Northrop hired Soliman as a software unit manager in July, 1993. Shortly after Soliman was hired, Northrop changed Soliman's title to technical advisor due to security clearance problems.

## II. Soliman's work evaluations

As part of Northrop's formal written evaluation system, Soliman was subject to periodic performance evaluations by his supervisors. He received an overall rating of "needs improvement" for 1993 and 1996 and a rating of "competent" for 1994, 1995, 1997,[1] and 1998. Soliman never received the higher ratings of "commendable" or "outstanding." In addition to ratings, Soliman's evaluations included narrative supervisor assessments. In Soliman's 1994 evaluation, his supervisor noted, "Progress was made but at a slower rate than expected." Motion for Summary Judgment, Appdx., Ex. 6. Soliman's supervisors made similar comments in later assessments:

> [Soliman] performed [tasks below his level] competently, but required more direction then is expected at his level. [Soliman] completed his more challenging tasks with technical competency but at a slower rate then expected. *Id. at* Ex. 7.

> His problem solving, requirement analysis and design skills are weak. . . . The amount of assistance [Soliman] needs from his teammates is much more than what is expected for his grade level. He had difficulty getting along with his teammates. Very often, he needs his supervisor's involvement in order to resolve simple technical questions or issues. *Id.* at Ex. 8.

> [Soliman] did not seem to have any idea how the 135 system worked, nor did he show any inclination to attempt to independently acquire such knowledge in order to successfully accomplish his work assignment. *Id.* at Ex. 1, § C.

> [Soliman] is very difficult to work with. He spends more time complaining about other people's perceived shortcomings and alleged conspiracy against him within the company than on constructively trying to find ways to perform more productively. *Id.* at Ex. 1, § D.

> [Soliman's] abysmal job performance the previous review period earned him a "needs improvement" rating during the performance evaluation. However, no formal improvement plans could be initiated with [Soliman] because of his refusal to acknowledge the evaluation. *Id.*

---

[1]Soliman originally received a "needs improvement" for 1997. Northrop asserts Soliman's rating was changed to motivate Soliman.

[Soliman's] refusal to see things from other perspectives besides his own often led to unnecessary confrontations between him and [others]. *Id.* at Ex. 1, § E.[2]

In October 1998, Stewart reassigned Soliman to work in the overhead department. Stewart asserts this assignment decision was based on Soliman's "mediocre software skills in critical programming languages and his inability to get along with other managers." Stewart Aff. at ¶ 6.

### III. Soliman's back condition

In the fall of 1993, Soliman was involved in a car accident and sustained a back injury. Soliman underwent surgery for the back injury in February 1995. As a result of the surgery, he was on work leave until April 10, 1995.

The day Soliman returned to work, he reinjured his back by lifting and rearranging boxes. He took several more weeks of work leave and then went back to work on a graduated schedule, eventually working full time. Once he returned to work, he asked Northrop for an ergonomic chair. Northrop accommodated his request. Soliman did not take additional leaves of absence for back pain. From 1996 until the time of his layoff, Soliman possessed a full work release, except for a ten pound lifting restriction.

### IV. Soliman's lay off

In February 1999, Stewart was directed to minimize the software engineering department's overhead expenditures. Consequently, Stewart discontinued the software technical research effort, which forced him to eliminate one of the seven technical advisor positions in his service unit. In determining which technical advisor to terminate, Stewart performed a comparative evaluation analysis in accord with Northrop's written layoff policy. Stewart considered supervisor evaluations and his own

---

[2]Soliman received each of these evaluations.

personal experiences with the employees during the analysis. Stewart ranked Soliman last in the analysis.

On March 12, 1999, Stewart informed Soliman that he would be laid off. Soliman was 59 years of age at the time. The decision was made solely by Stewart. Soliman's last day of work was May 10, 1999.

Throughout 1999, at least 40 employees from the Rowing Meadows facility were laid off. Northrop asserts many of these employees were laid off at approximately the same time as Soliman, and 11 employees within the software engineering department were laid off in July 1999. Stewart Aff. at ¶ 17.[3] Since March 1999, Northrop has not hired any software engineers at Soliman's job level. *Id.* at ¶ 20.[4]

On March 12, 1999, Soliman applied for and began receiving short-term disability payments from Northrop.[5] Eighteen months later Soliman began receiving long-term disability payments. Northrop's long term disability plan requires beneficiaries to certify they are totally disabled and unable to perform the functions of their job.

## **DISCUSSION**

### I. **Summary judgment standard**

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Resource*

---

[3]Soliman offers no evidence to dispute this assertion.

[4]Soliman offers no evidence to dispute this assertion.

[5]For two months, Soliman received a salary and disability benefits.

4

*Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome often depends on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II. Applicable Law

### A. The ADEA

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges age discrimination, an employer is liable only if age actually motivated the employer's decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2105 (2000) (citations omitted).

## B. The ADA

The ADA protects qualified individuals with disabilities from employment discrimination on account of the disability. "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual. . . ." 42 U.S.C. § 12112(a).

Soliman brings claims under both the ADEA and the ADA. He contends his age and physical condition were the sole reasons for Northrop's adverse employment decision. Soliman may prove intentional age or disability discrimination through either direct or indirect evidence. *Robin v. ESPO Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000; *Michas*, 209 F.3d at 692.

## III. Direct Evidence of Discrimination

Soliman offers comments made by several of his managers as direct evidence of discrimination. Specifically, he testified to the following: (1) his manager, Nora Lin, asked him his age in 1996; (2) Stewart asked him his age in 1998 after telling him he was too young for all his health problems; and (3) his manager, Sowah Anyetei, told him in 1997 or 1998 that he should not be asking certain questions because someone of his age and experience should know the answers. Northrop's Statement of Undisputed Facts ("Northrop Facts"), ¶¶ 24-26. For comments to serve as direct evidence of discrimination, they must be "contemporaneous with the discharge or causally related to the discharge decision making process." *Robin*, 200 F.3d at 1089.

The comments cited by Soliman are neither contemporaneous with his discharge nor causally related to the adverse employment decision. First, Soliman does not dispute that Stewart alone made the decision to terminate his position. Therefore, comments made by Lin and Anyetei cannot be

6

causally related to the discharge decision.[6] Additionally, the content of the comments cited by Soliman do not show a causal connection to Stewart's discharge decision. The comments do not take any form comparable to "I fired you because of your disability." *See Id.* at 1088 (holding direct evidence must take the form of "I fired you because of your disability"). The comments appear to be nothing more than random office banter, which is insufficient evidence of discriminatory intent. *Id.* at 1089. Finally, the alleged discriminatory comments were not contemporaneous with the discharge decision. Soliman contends the most recent comment was made in either 1997 or 1998. Northrop Facts, ¶ 26. Soliman's position was not terminated until March 1999. At least three months, and possibly two years, elapsed between the last comment and Stewart's discharge decision.[7] Accordingly, the comments cited by Soliman are insufficient to create a triable issue of material fact regarding age discrimination.

## IV.     Indirect Evidence of Discrimination

Soliman also relies on circumstantial evidence to establish Northrop's discriminatory intent. When a plaintiff attempts to establish discrimination with indirect evidence, courts have established a framework for allocating the burden of production between the parties and an order for the parties' presentation of proof. *Michas*, 209 F.3d at 692. The plaintiff must first make out a *prima facie* case

---

[6]Soliman asserts Lin's and Anyetei's evaluations were motivated by discrimination and, therefore, Stewart engaged in discrimination by relying on the evaluations. This argument fails as a matter of law. Soliman must offer direct evidence showing Stewart, the person making the adverse employment decision, was motivated by discrimination. *See e.g., Robin v. ESPO Engineering Corp.*, 23 F.Supp.2d 895, 900 (N.D. Ill. 1998) ("Direct proof of discriminatory intent in employment cases generally takes the form of a decision maker's admission that the employee was fired because of a forbidden factor"). Evidence suggesting Stewart relied on inaccurate evaluations does not establish discriminatory intent.

[7]Soliman asserts the contemporaneous requirement is satisfied because the alleged discriminatory comments were made around the same time his evaluations were prepared. This argument fails as a matter of law. The relevant link is between discriminatory comments and the decision to terminate employment.

7

of discrimination. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once a *prima facie* case has been established, the defendant must offer a legitimate non-discriminatory reason for the employment decision. *Id.* If the defendant can offer a non-discriminatory reason, the burden then shifts back to the plaintiff to prove the defendant's reason is merely a pretext for discrimination. *Id.* at 693.

### A. Soliman's *Prima Facie* Case For Age Discrimination

To make out a *prima facie* case of discrimination, plaintiffs typically must present evidence to show (1) they are a member of a protected class; (2) they met their employer's job expectations to a reasonable extent; (3) they were the victims of an adverse employment action; and (4) their position remained open or was filled by someone who is not a member of the protected class. *Id.* The fourth prong has been modified slightly for cases where the employer claims the plaintiff's position was terminated due to a reduction in force ("RIF"). "A RIF occurs when an employer permanently eliminates certain positions from its workforce." *Id.* In cases involving a RIF, the fourth prong requires the plaintiff to present evidence to show substantially younger employees in positions similar to the plaintiff's position were treated more favorably. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).

RIF analysis applies in this case. Northrop asserts Soliman's position was eliminated due to a reduction in force mandated by budgetary cuts in defense spending. Northrop further asserts over 40 employees were terminated from the Rolling Meadows facility in 1999.

Soliman contends the following employees were treated more favorably: Kin Lau, Terry McElligott, Abraham Lesnik, Michael Erickson, David Knight, and Lester Birman. Northrop Facts,

¶ 28. In order to prevail, Soliman must establish that these individuals are substantially younger and similarly situated to him.

Soliman cannot establish Lesnick is substantially younger. In order to be considered substantially younger, Lesnick must be ten years younger than Soliman. *Radue*, 219 F.3d at 619; *Hoffman v. Primedia Special Interest Publications*, 217 F.3d 522, 524 (7th Cir. 2000). Lesnik was born on February 6, 1946. Northrop Facts, ¶ 34. Soliman was born on October 30, 1939. *Id.* at ¶ 2. Therefore, Lesnik is not substantially younger than Soliman.

In addition, Soliman cannot establish that Lau, McElligott, Erickson, Knight, and Birman were similarly situated to him. "A plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Radue*, 219 F.3d at 617. Each of these employees received yearly ratings of either commendable or outstanding. Furthermore, Lau, McElligott, Erickson, and Knight received overall evaluations of "High" in 1999.[8] In contrast, Soliman received ratings of "competent" or "needs improvement," lower ratings never received by the employees listed above. Furthermore, Soliman provides no evidence that any of these employees received narrative assessments with similar adverse critiques. The employee evaluations provide evidence of significant differences between Soliman and those he contends were treated more favorably. The fact that Soliman and the other employees were software engineers and held the title of technical advisor is not sufficient to meet the similarly situated requirement. *See id.* (summary judgment in favor of defendant appropriate when there are some similarities but also substantial distinctions between the employees).[9]

---

[8] Birman's overall rating was "Medium." However, Birman received a commendable rating in 1997 and 1998. He was loaned to another department in 1996.

[9] Since Soliman cannot establish the fourth prong of his *prima facie* case, the issue of whether he could establish the second prong is moot.

9

## B. Soliman's *Prima Facie* Case For Disability Discrimination

To establish that he within the ADA's protected class, Soliman must show: (1) he suffers from a disability; (2) he was qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he was subjected to an adverse employment action as a result of his disability. *Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999); *Palao v. Fel-Pro, Inc.,* 117 F.Supp.2d 764, 766 (N.D. Ill. 2000).

Northrop asserts Soliman is precluded from claiming he was qualified to perform the essential functions of his job because he admitted he was unqualified. As evidence, Northrop points to the fact that Soliman claimed work incapacitation in order to receive disability benefits. However, certification of total disability for purposes of receiving disability benefits does not completely bar the argument that one is a qualified individual with a disability. *McCreary v. Libbey-Owens-Ford Co.,* 132 F.3d 1159, 1164 (7th Cir. 1997). This reasoning is based on the fact that the ADA's definition of "qualified individual with a disability" may differ materially from other definitions of disability. *Id.* However, the representations Soliman made to receive disability benefits can be used as evidence of his inability to perform the essential functions of his job.

Evidence of disability claims is especially damaging when plaintiffs fail to present evidence suggesting they are qualified for the position at issue. "In order to establish a genuine issue of material fact, the plaintiff must come forward with evidence . . .to show that the plaintiff can, with or without reasonable accommodation, perform the essential functions of the job." *Id.* at 1164-1165. Soliman fails to present any evidence that he could perform the essential functions of his job with or without accommodation. In fact, he testified there was no type of job he could perform in his condition. He noted he suffered from back pain, an inability to sit for longer than an hour and a half, and an inability

10

to stand for an extended time. He also testified he had to lie down frequently during the daytime. Soliman Dep. at p. 121. Soliman has not raised a genuine issue of material fact as to whether he is a qualified individual with a disability. Accordingly, he is not entitled to relief under the ADA.[10]

## C. Northrop's Burden of Production

The burden of production does not shift to Northrop because a reasonable jury could not find Soliman established a *prima facie* case of age or disability discrimination. But even if the burden of production had shifted, Northrop offers a legitimate non-discriminatory reason for terminating Soliman's position. Northrop shows that a RIF caused by a budget cut was the reason for Soliman's termination. A RIF is a legitimate reason for terminating an employee's position. *Paluck v. Gooding Rubber Company*, 221 F.3d 1003,1012 (7th Cir. 2000). Furthermore, Northrop considered Soliman's negative performance evaluations and written manager assessments as an additional reason for choosing to eliminate Soliman's position.

## D. Pretext

Even if Soliman presented sufficient evidence for a *prima facie* case, he would not prevail on his discrimination claims. After a defendant offers a legitimate non-discriminatory reason for termination, the plaintiff must be given the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 120 S.Ct at 2106 (citations omitted).

---

[10]Even if Soliman was a qualified individual with a disability, he still could not establish a *prima facie* case of disability discrimination. As discussed in the ADEA analysis, Soliman does not offer sufficient evidence to establish that the employees he named as more favorably treated were similarly situated.

11

In cases of a RIF, a plaintiff may show pretext with evidence that the RIF was just an excuse to get rid of plaintiffs who are old or disabled. *See Paluck,* 221 F.3d at 1012. "Even if there was a legitimate RIF, a plaintiff may show pretext by establishing that the specific reasons given for including him in the reduction were pretextual." *Id.* at 1013.

Soliman contends Northrop's pretext for discrimination is evidenced by the fact that Stewart terminated Soliman based on inaccurate and discriminatory performance evaluations. In regard to Soliman's claims of inaccuracy, "an employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability." *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 985 (7th Cir. 1999). Stewart offers no evidence to show his supervisors failed to accurately evaluate his work performance. Furthermore, as discussed above, Soliman has not provided sufficient evidence from which a reasonable jury could find the supervisors who conducted the evaluations were motivated by discrimination. Even if Soliman's evaluations were motivated by discrimination, Stewart's decision to rely on the accuracy of the evaluations is not sufficient evidence of discrimination. It merely reflects a legitimate business judgment. This court may not "sit as a super personnel department to review an employer's business decision." *Ritter,* 2000 WL 1677392, at * 5. *See also Kariotis v. Navistar Intern. Transp. Corp.,* 131 F.3d 672, 677 (7th Cir. 1997) (rejecting the idea that a shoddy investigation is evidence of discriminatory intent). Soliman offers no evidence suggesting Stewart thought the evaluations were based on discriminatory motives or that animus to older or disabled persons was the true motivation for Stewart's decision to terminate Soliman's employment.

## CONCLUSION

The motion for summary judgment is granted.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

February 21, 2001